UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYRON BARRERA LOPEZ, (A 094-373-493),<br>Petitioner,<br>v.<br>WARDEN, GOLDEN STATE ANNEX FACILITY,<br>Respondent. | No. 1:26-cv-05561-TLN-CKD<br><br>FINDINGS & RECOMMENDATIONS |

Petitioner is a federal immigration detainee who filed this habeas corpus action pursuant to 28 U.S.C. § 2241. This matter was referred to the undersigned by operation of Local Rule 302 and 28 U.S.C. § 636(b)(1).

## I. Factual and Procedural History

Petitioner is a citizen of Guatemala. ECF No. 1 at 4; 14-2 at 5. The record before this Court does not state the date and circumstances of Petitioner's initial entry into the United States, but charging documents indicate that he entered without inspection. ECF No. 14-2 at 20-21. In November 2006 and March 2009, Petitioner was convicted of disorderly conduct (public intoxication, Cal. Penal Code § 647(f)) and driving without a license (Cal. Vehicle Code § 12500(a)), respectively. Id. at 22-25. On April 6, 2009, U.S. Immigration and Customs Enforcement ("ICE") officers encountered Petitioner at the Marin County Jail, initiated removal

proceedings against him, and released him to their Intensive Supervision Appearance Program ("ISAP"). Id. at 7. While removal proceedings were pending, Petitioner was arrested twice more: in August 2009 for driving under the influence of alcohol ("DUI") (Cal. Penal Code §§ 23152(a), (b)), hit and run (Cal. Vehicle Code §20002(a)), and possession of marijuana while driving (Cal. Vehicle Code § 23222(b)), for which he either completed a pre-plea diversion or was not convicted;[1] and in August 2010 for disorderly conduct (peeking into an inhabited building, Cal. Penal Code § 647(i)) and obstructing a public official (Cal. Penal Code §148(a)(1)), for which he was convicted. Id. at 25-26. After an immigration judge ("IJ") granted Petitioner's request for voluntary departure, Petitioner returned to Guatemala on February 2, 2011. Id. at 7; ECF No. 17-1 at 1. He returned to the U.S. in March 2011. ECF No. 14-2 at 12-13.

In September 2013, ICE took Petitioner into custody and initiated removal proceedings against him again.[2] Id. at 7, 12-13. The record before this Court does not state the date, circumstances, or conditions of release from ICE custody, but the undersigned infers that ICE released him sometime before his next criminal arrest in 2016.

Between February 2016 and April 2026, Petitioner was arrested several more times. He received four DUI convictions (Cal. Penal Code §§23152(a), (b)), completed a diversion for two disorderly conduct charges (Cal. Penal Code §§ 647(f), (h)), and received a felony conviction for assault with intent to commit rape (Cal. Penal Code § 220(a)(1) with an enhancement under § 264.1). ECF No. 14-2 at 27-34. ICE arrested and detained Petitioner again on June 20, 2026. ECF No. 14-2 at 5-10.

Petitioner filed a pro se petition for writ of habeas corpus on July 17, 2026. ECF No. 1. After appointment of counsel, Petitioner filed an amended petition clarifying that he does not challenge ICE's authority to arrest and detain him – he assumes that his criminal history renders him subject to mandatory detention under 8 U.S.C. §1226(c) – but rather claims that ongoing,

---

[1] Per the FBI RAP sheet, Petitioner was granted relief pursuant to Cal. Penal Code § 851.93. ECF No. 14-2 at 25.

[2] The RAP sheet indicates law enforcement action in 2013, but it appears such action refers to sentencing or booking for a prior arrest. ECF No. 14-2 at 26-27.

prolonged[3] detention without an individualized determination of danger and flight risk violates his Fifth Amendment right to due process. ECF No. 14. He also informed the Court that he has a pending petition before U.S. Citizenship and Immigration Services ("USCIS") for U nonimmigrant status ("U visa") and is therefore a member of a nationwide class recently certified in Immigration Center for Women and Children v. Noem, 351 F.R.D. 324 (C.D. Cal. May 20, 2026) ("ICWC"), which restored a prior ICE directive to defer civil immigration enforcement against certain noncitizens with pending U-visa petitions. ECF No. 15. Respondent's reply discussed its position on the relevant detention authority (see section II, infra), argued that Petitioner has failed to exhaust his administrative remedies, and stated that ICWC does not bar detention for certain class members, such as those who pose an articulable risk of death, violence, or physical harm. ECF No. 17.

## II. Relevant Detention Authority

"Where a [noncitizen] falls within this statutory scheme can affect whether his detention is mandatory or discretionary, as well as the kind of review process available to him if he wishes to contest the necessity of his detention." Prieto-Romero v. Clark, 534 F.3d 1053, 1057 (9th Cir. 2008). The relevant detention statutes at issue here are 8 U.S.C. §§ 1225(b)(2), 1226(a), and 1226(c).

Respondent maintains a position that 8 U.S.C. 1225(b)(2)(A) governs Petitioner's detention. Under 8 U.S.C. § 1225, a noncitizen who arrives in the U.S. is treated as an applicant for admission. Jennings v. Rodriguez, 583 U.S. 281, 286 (2018). Noncitizens determined to be inadmissible under certain specific grounds are covered by § 1225(b)(1) and subject to expedited removal unless they demonstrate a credible fear of persecution, after which they are detained pending adjudication of their application for asylum. 8 U.S.C. § 1225(b)(1). All other applicants for admission not covered by § 1225(b)(1) fall under § 1225(b)(2). Those subject to § 1225(b)(2) "shall be detained" while placed in removal proceedings. Respondent's position that Petitioner is

---

[3] At the time Petitioner filed the first amended petition, a removal hearing in immigration court had not yet been scheduled, enhancing his argument that detention could become unreasonably prolonged. An individual hearing has now been scheduled for November 6, 2026. EOIR Automated Case Information, https://acis.eoir.justice.gov/en/caseInformation/.

subject to mandatory detention pursuant to 8 U.S.C. § 1225(b) is contrary to recent Ninth Circuit precedent. Noncitizens "present without admission who are apprehended in the interior of the United States are subject to the detention regime of § 1226, not § 1225(b)(2)(A)." Rodriguez Vazquez v. Bostock, 183 F.4th 1160, 1165 (9th Cir., 2026). Each time ICE detained Petitioner, he had already been present in the U.S. for years. Therefore, § 1226 governs his detention.

8 U.S.C. § 1226 governs the detention of noncitizens who are already present in the U.S. but are subject to removal proceedings. While § 1226(a) allows the government to either detain *or* release noncitizens while their removal proceedings are pending, § 1226(c) imposes *mandatory* detention on certain noncitizens. 8 U.S.C § 1226(c)(1) ("The Attorney General *shall* take into custody…) (emphasis added). See also 8 U.S.C § 1226(c)(4) (allowing release *only if* the Attorney General (AG) deems it necessary for witness protection *and* if the AG determines such noncitizen witness will not pose a danger or flight risk). 8 U.S.C. § 1226(c)(1)(A) requires detention of noncitizens who are inadmissible by reason for having committed any offense covered in 8 U.S.C. § 1182(a)(2), which includes those who have committed crimes involving moral turpitude. 8 U.S.C. §§ 1226(c)(1)(A), 1182(a)(2)(A). Petitioner "proceeds on the understanding" that his 2023 conviction under Cal. Penal Code § 220(a)(1) (assault with intent to rape) renders him subject to mandatory detention per §1226(c). ECF No. 14 at 7, fn 1. However, Respondent asserts that Petitioner does not possess a qualifying offense for § 1226(c) detention. Absent the parties' agreement or a clear showing that a conviction under Cal. Penal Code § 220(a)(1) constitutes a crime involving moral turpitude or any other category of crime relevant to §1226(c), the undersigned defers to Respondent's assertion that § 1226(a), rather than § 1226(c) is the correct authority. See Id.

When a noncitizen is taken into immigration custody pursuant to § 1226(a), ICE makes an initial custody determination. See 8 C.F.R. § 236.1(c)(8). After this initial custody determination, the noncitizen may request a custody redetermination ("bond hearing") by an IJ, which is appealable to the Board of Immigration Appeals ("BIA"). 8 C.F.R. §§ 236.1(d)(1); 1003.19(f). At the bond hearing, the detained noncitizen bears the burden to demonstrate that they are not a danger to the community, are not a threat to national security, and are not a flight

risk. Matter of Siniauskas, 27 I.&N. Dec. 207, 208 (BIA 2018), citing Matter of Fatahi, 26 I.&N. Dec. 791, 793-94 (BIA 2016).

**III. Exhaustion**

Respondent argues that Petitioner has failed to exhaust administrative remedies because he has not sought a bond hearing before an IJ. The exhaustion requirement under § 2241 is prudential rather than jurisdictional. Castro-Cortez v. INS, 239 F.3d 1037, 1047 n. 11 (9th Cir. 2001), *abrogated on other grounds by* Fernandez-Vargas v. Gonzales, 548 U.S. 30 (2006). Courts may require exhaustion if (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review. Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (internal quotation marks omitted). Where the Puga factors weigh in favor of requiring exhaustion, such requirement may be waived. The Ninth Circuit has found it appropriate to waive exhaustion where administrative remedies would be inadequate or pursuit of such would be futile, irreparable injury would result, or the petition poses a substantial constitutional question or issue separate from the administrative remedy itself. Laing v. Ashcroft, 370 F.3d 994, 998 (9th Cir. 2004).

The undersigned finds that this matter merits a waiver of the exhaustion requirement because the petition poses a constitutional issue separate from the available administrative remedy. Petitioner is not asking the Court to order a bond hearing per 8 U.S.C. § 1226(a) in which the detained noncitizen is given the opportunity to demonstrate that they do not pose a danger to the community or risk of flight. If Petitioner were solely seeking such a bond hearing, the undersigned might agree with Respondent that Petitioner must first exhaust administrative remedies by requesting IJ review of the custody determination and pursuing any applicable appeals before the BIA.[4] However, Petitioner is requesting a hearing in which the *government*

---

[4] That said, given that Respondent maintains that U.S.C. §1225(b)(2)(A) governs Petitioner's detention, the undersigned is also concerned that if the district court requires Petitioner to first request a bond hearing before EOIR, the immigration court might still decline to take jurisdiction of the custody determination (despite Rodriguez Vazquez v. Bostock,) which would render pursuit of administrative remedies futile.

must bear the burden to demonstrate that detention is warranted. The Executive Office for Immigration Review ("EOIR," which includes the immigration courts and the BIA) offers no such remedy, nor can it address the constitutional questions of due process that Petitioner raises.

**IV. Due Process Analysis**

The Supreme Court has held that "the Due Process Clause applies to all 'persons' within the United States, including [noncitizens], whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). Similarly, Ninth Circuit precedent holds that the Due Process Clause applies to noncitizens regardless of whether they are "seeking admission" or are "admitted" under immigration law. Wong v. United States, 373 F.3d 952, 973 (9th Cir. 2004), abrogated on other grounds by Wilkie v. Robbins, 551 U.S. 537 (2007). The Due Process Clause "protects individuals against two types of government action: violations of substantive due process and procedural due process." United States v. Quintero, 995 F.3d 1044, 1051 (9th Cir. 2021) (internal quotation omitted). ). Petitioner raises an as-applied procedural due process challenge to his ongoing detention without a hearing where the government must justify that detention is warranted. An as-applied challenge "contends that the law is unconstitutional as applied to the litigant's particular [circumstances], even though the law may be capable of valid application to others." Foti v. City of Menlo Park, 146 F.3d 629, 635 (9th Cir. 1998) (citation omitted). Though the Ninth Circuit has found that § 1226(a) offers constitutionally sufficient procedural safeguards, it has not foreclosed as-applied challenges to §1226(a) detention. Rodriguez Diaz v. Garland, 53 F.4th 1189, 1213 (9th Cir. 2022).

Courts examine procedural due process claims in two steps. The first step is determining whether there exists a protected liberty interest under the Due Process Clause. The second step examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. See Kentucky Dep't of Corrections v. Thompson, 490 U.S. 454, 460 (1989); Morrissey v. Brewer, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

**A. Liberty Interest**

A person who has been released from physical restraint gains a "liberty [interest that] is

valuable and must be seen as within the protection of the" Due Process Clause. Morrissey v. Brewer, 408 U.S. 471, 482 (1972). "Even when a statute authorizes detention without a hearing, a protected liberty interest under the Due Process Clause may entitle the individual to procedural protections not found in the statute." Carballo v. Andrews, No. 1:25-CV-00978-KES-EPG, 2025 WL 2381464, at *5 (E.D. Cal. Aug. 15, 2025) (citing Morrissey, 408 U.S. at 482; Gagnon v. Scarpelli, 411 U.S. 778, 782 (1973); Young v. Harper, 520 U.S. 143, 147–49 (1997)); see also Rico-Tapia v. Smith, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). Here, Petitioner gained a protected liberty interest in his continued freedom when he was released from ICE custody after September 2013. Numerous courts, including those in this district, have found that individuals paroled and/or released from ICE custody have a protected interest in remaining out of custody. See Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1176–77 (E.D. Cal. 2025); Acosta v. Warden of the Golden State Annex Detention Facility, No. 1:26-cv-00530-TLN-EFB, 2026 WL 350831, at *3 (E.D. Cal. Feb. 9, 2026); Singh v. Chestnut, No. 1:26-cv-00546-DJC-AC, 2026 WL 266021, at *2 (E.D. Cal. Feb. 2, 2026) (citing cases). Selis Tinoco v. Noem, 1:25-cv-01762-DC-JDP, 2025 WL 3567862 (E.D. Cal. Dec. 14, 2025); Labrador-Prato v. Noem, 1:25-cv-01598-DC-SCR, 2025 WL 3458802 (E.D. Cal. Dec. 2, 2025); D.L.C. v. Wofford, 1:25-cv-01996-DC-JDP, 2026 WL 25511 (E.D. Cal. Jan. 5, 2026). Accordingly, the undersigned finds that Petitioner has a protected liberty interest and may invoke the Due Process Clause to seek relief in his individualized circumstances.

### B. Procedures Required – Mathews Factors

In deciding what process is due to immigration detainees, the Ninth Circuit has assumed, without deciding, that the three-part test articulated in Mathews v. Eldridge, 424 U.S. 319 (1976), applies. See Rodriguez Diaz v. Garland, 53 F.4th 1189, 1206-07 (9th Cir. 2022). Under Mathews, the court considers three factors: (1) the private interest affected; (2) the risk of an erroneous deprivation of that interest; and (3) the government's interest involved including any fiscal or administrative burden that additional procedures would include. Mathews, 424 U.S. at

335.

1. Private Interest

Turning to the first factor in Mathews, Petitioner has a liberty interest in maintaining his out-of-custody status. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that [the Due Process] Clause protects." Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Petitioner's residence of long duration in the U.S. after release supports his private liberty interest. See Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *10 (S.D. Cal. Oct. 1, 2025) ("Petitioner has a private interest in remaining free, which developed over the year he resided in the United States."). Petitioner's pursuit of lawful immigration status – the pending U visa application – also supports his liberty interest. This liberty interest is heightened by Petitioner's membership in the ICWC "Pending Petition Class," as he has acquired an expectation that the government consider the pending petition in its detention and removal decisions.

2. Risk of Erroneous Deprivation

The second Mathews factor is "the risk of an erroneous deprivation of [Petitioner's] interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." Mathews, 424 U.S. at 335.

"Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, 815 F. Supp. 3d 1098, 1106 (E.D. Cal. 2025) (quoting Zadvydas v. Davis, 533 U.S. 678, 690 (2001). Courts in this circuit have found that the risk of erroneous deprivation is high when the noncitizen has not received a bond or custody hearing to determine whether there is any valid basis for detention after a prior release. Kaur v. United States Dep't of Homeland Sec., 813 F. Supp. 3d 1167, 1176–77 (E.D. Cal. 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025, 1035 (N.D. Cal. 2025) (quoting Singh v. Andrews, No. 1:25-cv-00801, 2025 WL 1918679, at *7 (E.D. Cal. July 11, 2025)). Respondent implies that any infringement on Petitioner's liberty interest can be addressed through the bond hearing process embedded in §1226(a). As discussed in section III, supra, a § 1226(a) bond hearing would not provide sufficient process because such a hearing

would place the burden on *Petitioner* to demonstrate that he does not pose a danger or flight risk, rather than placing the burden on the *government* to demonstrate that detention *after a prior release* is warranted. It also would not necessarily require the government to justify its decision to detain despite Petitioner's purported ICWC class membership.

Courts in this circuit have frequently found that due process requires notice and a hearing *before* a previously-released noncitizen may be re-detained. See Garcia v. Andrews, No. 2:25-cv-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025); Guillermo M.R. v. Kaiser, No. 25-cv-05436-RFL, 2025 WL 1983677, at *9 (N.D. Cal. July 17, 2025); Pinchi v. Noem, 792 F. Supp. 3d 1025 (N.D. Cal. 2025); Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. Nov. 22, 2019); Doe v. Becerra, No. 2:25-CV-00647-DJC-DMC, 2025 WL 691664, at *6 (E.D. Cal. Mar. 3, 2025); Diaz v. Kaiser, No. 3:25-cv-05071, 2025 WL 1676854, at *2 (N.D. Cal. June 14, 2025); Romero v. Kaiser, No. 22-cv-02508-TSH, 2022 WL 1443250, at *4 (N.D. Cal. May 6, 2022); Vargas v. Jennings, No. 20-cv-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The undersigned agrees that Petitioner should have been afforded pre-deprivation notice and process before being re-detained. However, the risk of erroneous deprivation in the absence of a pre-deprivation hearing here is lower due to Petitioner's intervening criminal convictions.[5] Courts in this district have found that, where the government has asserted a non-pretextual basis for re-detention after a previous release, the appropriate remedy is a *post*-deprivation hearing where the burden of proof lies with the government. Calvillo v. Chestnut, No. 1:26-cv-00569-DC-CSK, 2026 WL 253627 at *3 (E.D. Cal. Jan. 31, 2026). The appropriate remedy here, then, is a post-deprivation process in which the government must provide Petitioner notice of its reasons for re-detention,[6] and must demonstrate to a neutral arbiter that the alleged changed circumstances demonstrate that Petitioner poses either a flight risk or threat to public safety, such that his detention is justified even in light of his membership in an ICWC class.

---

[5] Moreover, Petitioner is not challenging the validity of the arrest and detention itself, but rather is requesting that the government show that *ongoing* detention is justified. ECF No. 14-1 at 20.

[6] Neither party submitted documents relating to any of the prior releases, so this Court is unable to assess whether Petitioner violated any terms of the prior release(s).

3. Government's Interest

Under the third Mathews factor, the Court weighs the government's interest, "including the function involved and the fiscal and administrative burdens that the additional or substitute requirement would entail." Mathews, 424 U.S. at 335.

"[T]he government has a strong interest in effecting removal, and in protecting the public from danger." Maksim v. Annex, No. 1:25-cv-00955-SKO (HC), 2025 WL 2879328, at *5 (E.D. Cal. Oct. 9, 2025) (citations omitted). Respondent argues that Petitioner's detention is warranted because he "carries a significant risk of death, violence, and physical harm." ECF No. 17 at 8. Indeed, Petitioner's criminal history, especially his recent conviction for attempted rape, suggests – but does not establish on its own – that Petitioner may pose a danger to the community. See In re Guerra, 24 I.&N. Dec. 37, 40 (BIA 2006) (instructing IJs to consider the extensiveness, recency, and seriousness of a noncitizen's criminal history along with several other factors to determine danger and flight risk). A hearing is necessary to properly consider all relevant factors. The effort and cost required to provide Petitioner with a post-deprivation hearing are minimal, and would require no more resources than would be expended to provide a hearing per § 1226(a). See D. L.C., 2026 WL 25511, at *5 ("Custody hearings in immigration court are routine and impose a 'minimal' cost on the government." (quoting Doe v. Becerra, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025)).

## V. Recommendation

Accordingly, IT IS HEREBY RECOMMENDED that Petitioner Byron Barrera Lopez' (A 094-373-493) petition for writ of habeas corpus be GRANTED, as follows:

1. Respondent be ORDERED to provide Petitioner a bond hearing before an immigration judge within seven (7) days of the date of entry of the order, at which Petitioner shall be allowed to have counsel present;
2. Prior to the bond hearing, Respondent must provide Petitioner notice of the hearing along with its reasons for revoking any prior release;
3. At the bond hearing, Respondent shall bear the burden of demonstrating, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk

of flight. The parties must also address – and the IJ must consider – the effect, if any, of Petitioner's membership in the ICWC "Pending Petition Class."

3. Within three (3) days of the bond hearing, Respondent shall file a status report in this case confirming that Petitioner has been provided the bond hearing;

4. If Respondent fails to provide Petitioner a compliant and constitutionally adequate bond hearing within seven (7) days, Petitioner shall be immediately released from Respondent's custody on the same terms as his most recent release, and the Clerk be directed to serve the relevant detention facility with a copy of any order granting release;

5. If the government seeks to re-detain Petitioner following any release, it must provide no less than seven (7) days' notice to Petitioner and must hold a pre-deprivation bond hearing before a neutral arbiter, at which Petitioner's eligibility for bond must be considered; and

6. The order not address the circumstances in which Respondent may detain Petitioner in the event Petitioner becomes subject to an executable final order of removal and Petitioner receives notice of that final order of removal.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within **seven days** after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. The undersigned finds that a shortened objection period is warranted in this case given the nature of the relief at issue as well as the fact that the parties have had sufficient time to submit all of their arguments in written briefs. See United States v. Barney, 568 F.2d 134, 136 (9th Cir. 1978) (per curiam) (stating that 28 U.S.C. § 636(b)(1) sets

/////

/////

/////

/////

/////

the maximum objection period and not the minimum); see also Local Rule 304(b). The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

Dated: October 20, 2026

CAROLYN K. DELANEY
UNITED STATES MAGISTRATE JUDGE

3 barr5561.imm.fnr